When you're ready, Council. Thank you, Your Honors. My name is Katherine Digas. I'm an attorney for the plaintiff, Ms. Franchino. And we have a few arguments that we're presenting. The clock hasn't started yet. Is that? There we go. So we have a couple of arguments that we're presenting today. One is that the ALJ failed to provide specific and legitimate reasons to reject the treating physician opinions of Dr. Garrison and that the ALJ failed to provide clear and convincing reasons to reject the symptom testimony. So based on the filing of this initial application, the prior regulations apply. So we're required to apply the treating physician rule and the ALJ has to provide specific and legitimate reasons to reject the opinion of a treating physician. And the ALJ is required to do more than just offer conclusions. She's required to set forth her own interpretations and explain why she rather than the doctors are correct. Dr. Garrison, in this case, rather than the doctor, she she can't overrule a doctor, but she can cite other medical testimony. And I think that's what she attempted to do. Correct. She well, she gave a couple of reasons why she she rejected it, but none of them are legitimate reasons and some of them are not specific reasons and her and her. Let's get down to particulars. For example, in your brief, you you criticize the rejection of Dr. Garrison's testimony because the record consistently showed Franchino had a normal and steady gait, but argue in your brief that the majority of the records described as overwhelming evidence are from 2016. What's the onset date that you're claiming? We're claiming an onset date of 2013. So why isn't that legitimate evidence to suggest that that your client was not disabled during the period which by your own application starts in 2013? Complaining that that the citations and the records are from 2016 doesn't really defeat the conclusion, does it? For for that period, for the there's from 2017, there starts to be consistent records that that transition from normal to chronically ill, distressed, limping. I didn't see anything in your brief saying that your claim is now limited to 2017 and rejecting Dr. Garrison's opinion for the entire period. Based on that, she should have still considered a that there was a period of disability that Mr. Franchino qualified for. You're asking the ALJ to decide a case that you didn't present. You haven't even presented to us yet. You presented a case with an onset date of 2013. The ALJ ruled on that. And now you're trying to suggest, well, that was wrong because we didn't really mean it for the first four years. But I don't see anything that suggests that you ever told the ALJ or this court that it should adjust the onset date. Well, the ALJ is required to see if she met the definition of disability during the period of time from the onset date through the the date of the hearing, the date of the decision. And she erred in ruling that during the entire period that Ms. Franchino did not meet the definition of disability. I think the problem with the case, counsel, is that the ALJ did point to objective evidence in the record that undermined Dr. Garrison's conclusions. So let's assume that the normal steady gate issue really doesn't really indicate whether she had the ability, the endurance ability. What about the objective evidence in the record that undermined Dr. Garrison's assessment that was pointed out by the ALJ? Well, she failed to provide an analysis that was specific to Dr. Garrison's opinion. She, in her summary, she just provided a general summary without providing specific comparisons to Dr. Garrison's assessment. Well, let's take another example you discussed in the opening brief about Dr. Garrison's assessment appearing to be inconsistent with her own described activities, in particular, driving to California. His assessment was that she could not exceed 15 minutes of sitting at one time. And you've suggested, gee, the record doesn't demonstrate that they didn't stop every 15 minutes or do something else. But is that a realistic argument? If she had to take extraordinary efforts to be able to make that trip, a trip she made more than once, that's something I presume she would have testified to. She didn't. And so why can't the ALJ say, gee, Dr. Garrison said she couldn't sit for more than 15 minutes, but she's taking these driving trips to California? So, for one, the ALJ did stop short of saying there's a conflict. She said the multiple trips are, quote, intention. So she didn't outright say that there's a conflict, which I think I'm arguing is not specific to say that they're intention. And Dr. Franchino could sit in a competitive work environment where she was completing tasks on day in, day out for 40 hours a week. And if the ALJ is going to use driving trips, which there's really not enough information in the record to determine how what her activity level was on those driving tips. Let me read specifically from the page six of the ALJ's decision. Talking about Dr. Garrison's assessment, the evidence described above indicates the claimant went on multiple long distance trips of fact intention with intention with Dr. Garrison's sitting limitation. That sounds to me like a pretty specific reference, where you said that didn't make a specific enough reference. How more specific could that be? She said, and just my argument is that she uses the the freezing intention. I don't think it's very clear that she's saying she stopped short of saying there's an outright conflict. Well, okay. She's being polite, but I'm not sure that's going to get us anywhere. I understand that argument. When the ALJ cites to the doctor's opinion, and explains why it's contradicted by the record and gives examples, that seems to be a specific link to me. But we have your argument. Do you want to save the rest of your time? Yes, please. Good morning, your honors. May it please the court, Sarah Moe, appearing on behalf of the Commissioner of the Social Security Administration. Ms. Franchino alleges she is disabled largely due to fibromyalgia and osteoarthritis as far back as December 2013. She didn't begin treating for those impairments until 2016. And even when she did, she made very specific and explicit statements about and severe complaints about her symptoms, including numbness in her hands, swelling in her hands, very limited ability to sit, stand and walk, which the ALJ reasonably found stood at odds with her activities and with the objective evidence. And those same reasons undermine the Dr. Garrison's opinion as well. So let's turn to the ALJ's evaluation of Dr. Garrison's opinion. As you were discussing, the ALJ found that Dr. Garrison's opinion was inconsistent, or excuse me, the ALJ said that it was in tension with the claimant's activities of traveling to California. And those activities are repeated throughout their record. There are frequent references to Ms. And while it is true that there is no indication exactly where in California she was traveling, there is also no indication and it's also true that there is no indication in the record whether she was driving herself or whether she was a passenger. It's also true that in the record, there is no indication that she had difficulty on her travels to California, on her multiple trips to California. There's no reports to her treating providers that she had a hard time traveling to California, that she was in pain as a result of her travel to California. And given the record as a whole, it was reasonable for the ALJ to find that Dr. Garrison's opinion about sitting stood in contrast to Ms. Franchino's activities. One of the problems with claims based on fibromyalgia, and for that matter, osteoarthritis, is that the conditions aren't always constant. That is, they can come and go. And I get your point, and indeed made the same point, and yet it's not impossible to conceive that the claimant took those trips when she could and didn't take those trips when she couldn't, but she couldn't work because she had distress too often to permit her to keep a job. Is that something the ALJ should have commented on more specifically? No, I don't think the ALJ should have commented on that more specifically, because although there is a point when Ms. Franchino says that on good days, she does more, and on bad days, she does less, there really isn't any indication in the record, for example, with regard to her travel to California, that she ever had to cancel it because she was having a bad day or she ever had to move the trips. There's also evidence of other activities that stand at odds with her symptom allegations, and those activities occur on a more regular basis. So, for example, she reported occasional exercise, and in fact, in January 2019, she reported she was walking for exercise and had succeeded in losing weight as a result of that walking for exercise. And while, again, the record doesn't indicate that she was, you know, walking every single day for a specific period of time, the fact that it was continuing on a sufficient enough basis for her exercise to result in weight loss is a reasonable consideration for the ALJ to have looked at in evaluating her subjective symptom complaints as it came to fibromyalgia and osteoarthritis. The ALJ also pointed to other very specific inconsistencies in the record when it came to fibromyalgia and osteoarthritis and her complaints about the symptoms as a result of them. So, for example, she complained that she had such swelling in her hands that it was difficult to type or write or pick up coins, but on examination, she consistently did not have edema or swelling in her hands. She complained of numbness in her hands and feet, but on examination, she had intact sensation. And she, I'm sorry. Oh, I think I heard a mechanical sound. It was rustling in the background. She also, as we've discussed, complained of difficulties walking, and in fact, at the hearing said she can only walk a few feet without her cane. But during the record, for the most part, she consistently had a normal gait and station. And again, as of January 2019, was walking for weight loss. So the ALJ pointed to sufficient evidence in the record that contradicted her claims of the severity of her symptom complaints to find that they were undermined. The ALJ pointed both to that objective evidence and to her symptom, or excuse me, and to her activities. And as we're going back quickly to Dr. Garrison, the ALJ pointed to those same things, but also pointed to the fact that Dr. Garrison assessed an opinion that he said would stretch back five or 10 years. And as for the longest period that he assessed, a 10-year period, that's just simply untrue. It's simply untrue that Ms. Franchino required a cane, could sit, stand, and walk only two hours each day. Because 10 years prior to Dr. Garrison's opinion, Ms. Franchino was working full-time. And then five years prior to Dr. Garrison's opinion, she wasn't using a cane at all. So again, Dr. Garrison's opinion that she required a cane. And at one point, I believe he checked a box suggesting that she might need a wheelchair or two canes to ambulate at all. That simply is clearly untrue for the past five-year period that he assessed. So, unless there are any further questions. All right, thank you very much, Council. Thank you. Thank you. I just wanted to touch on the discussion about Ms. Franchino walking so much that she had weight loss. And the treatment note that that comes from is that she says to her mental health provider that she was feeling better. She was feeling good. She was walking with her husband. And has lost some weight. The record clearly shows that she struggles with her weight. But if you look at the appointments where her weight was actually taken, I'm afraid any perceived weight loss was aspirational. A couple months prior to the appointment, she weighed 250 pounds as a 5'3 woman. And a couple months after that, she had weighed about 243 pounds, which is just one or two pounds off of normal weight fluctuation. So, to take that one statement and make a finding that the ALJ found is unsupported and certainly not convincing. And with that, I'm going to conclude. All right. Thank you very much to both Council for your arguments today. The matter is submitted.
judges: CLIFTON, BEA, NGUYEN